# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **A.M. and K.M.**

**No. 22-0053** (Kanawha County 21-JA-416 and 21-JA-417)

## MEMORANDUM DECISION

Petitioner Mother D.C., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's January 27, 2022, order terminating her parental rights to A.M. and K.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer L. Anderson, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-adjudicatory improvement period and when less restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the governing law, the briefs, and the record presented, the Court finds that the circuit court failed to rule on petitioner's motion for an improvement period or make sufficient findings of fact upon which to base the termination of petitioner's parental rights. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand for further proceedings consistent with this decision.

In July of 2021, the DHHR filed a petition alleging that petitioner medically neglected A.M., who suffers from sickle cell anemia. According to the DHHR, the child was without his prescribed medication for three to four months, resulting in health problems that required hospitalization. At the time of the child's hospitalization, Child Protective Services ("CPS") determined that there was no imminent danger, although they did substantiate medical neglect. The child was discharged with medication for one month and a follow-up appointment scheduled for further treatment. However, less than one month later, A.M. was readmitted as a result of not

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

receiving his medication. According to the petition, the child's godmother and her wife brought the child for treatment. The godmother disclosed that petitioner had recently been involuntarily hospitalized because of her hallucinations and methamphetamine use. During its investigation, CPS discovered that the children had witnessed multiple instances of petitioner's significant other committing domestic violence against her. Based on the foregoing, the DHHR alleged that the children were abused and neglected.[2]

In October of 2021, the court held an adjudicatory hearing. Following the presentation of the evidence, the court pronounced the following: "The [c]ourt will grant the State's request and find that there is clear and convincing evidence that these children are abused and neglected as defined by the West Virginia State Code. And we will move to disposition." This constitutes the only finding the court made on the record regarding petitioner's adjudication. Further, it must be noted that the court's adjudicatory order is a form document containing quoted statutory language with blanks next to each "finding" where the court could include a checkmark to indicate that the "finding" was being made and a blank line where a name could be handwritten in order to designate to whom the "finding" applied. In the order, the court found—by checking boxes—that both children were abused and neglected and that petitioner was an abusing parent. It is important to stress that the adjudicatory order contains no specific findings of fact or conclusions of law.[3]

Following adjudication, petitioner filed a written motion for a post-adjudicatory improvement period. According to a report from the guardian prepared in anticipation of the dispositional hearing, petitioner had not submitted to any ordered drug screens during the proceedings and, as a result, had not been permitted to visit the children. According to the guardian, petitioner had not participated in services and had not remained in contact with the DHHR during the proceedings. The guardian further asserted that there was no likelihood that the conditions of abuse and neglect could be corrected because petitioner had failed to acknowledge or minimized her conduct. Accordingly, the guardian believed that termination of petitioner's parental rights was necessary. A DHHR court summary from the same timeframe corroborated the guardian's assertions regarding petitioner's lack of compliance. Shortly prior to the dispositional hearing, petitioner disclosed a certificate demonstrating her successful completion of a twenty-eight-day residential substance abuse treatment program.

In December of 2021, the court entered an "Order Regarding Continuance" in which it noted, in handwriting, that it granted an "order of protection for guardian of children until date of hearing, for NO CONTACT, directly or indirectly. [Petitioner] made threats to guardians."

In January of 2022, the court held a dispositional hearing. Following the presentation of evidence, the court remarked that although petitioner completed residential substance abuse treatment, "it happened a bit too late. Actually, a lot too late." The court then concluded that "it is

---

[2]The DHHR later amended the petition to include the godmother and her wife as named respondents, although no allegations were made against them.

[3]On appeal, petitioner raised no specific assignment of error concerning the court's adjudicatory order, although she does correctly point out that the order does not contain any specific findings beyond concluding that she abused and neglected the children.

not likely that [petitioner] can correct these problems reasonably—it's not reasonable that she can." The court also found that "[t]he children are comfortable in their placement" and "feel safe and happy." It was "for all those reasons" that the court ruled it would terminate petitioner's parental rights. Neither the transcript from this hearing nor the dispositional order indicate that the court explicitly ruled on petitioner's motion for an improvement period, although the termination of her parental rights constituted an implicit denial. Similar to the adjudicatory order, the dispositional order constitutes a form containing language from applicable statutes with a blank space for checkmarks to indicate that "findings" have been made and a space for handwriting the names of any adult or child to whom these "findings" are meant to apply. By checking boxes, the court "found" that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because she failed to follow through with the family case plan and other rehabilitative services and that the children's best interests required termination of her parental rights, although there are no findings specific to petitioner contained in the order.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Further, we have explained that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the . . . case [will be] remanded for compliance with that process.

Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001)).

Upon our review, we are unable to properly address petitioner's assignment of error concerning the denial of her motion for a post-adjudicatory improvement period because the record

---

[4]The father's parental rights were also terminated. The permanency plan for the children is adoption in the current placement.

does not reveal any ruling by the circuit court on this motion. In discussing the sufficiency of dispositional orders in abuse and neglect proceedings, we previously explained that

> [p]rocedurally, these various directives [set forth in the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes] also provide the necessary framework for appellate review of a circuit court's action. Where a lower court has not shown compliance with these requirements in a final order, and such cannot be readily gleaned by this Court from the record, the laudable and indispensable goal of proper appellate review is thwarted.

*In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001). We further explained that "[a]dequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court." *Id.* (citation omitted). *Edward B.* concerned a dispositional order that failed to include specific findings required for termination of parental rights. *Id.* at 629-30, 558 S.E.2d at 628-29. Although that is not the precise situation at issue in petitioner's first assignment of error, it is nonetheless instructive in a circumstance in which the court made *no ruling* regarding petitioner's motion for a post-adjudicatory improvement period. Such motions are left to the court's discretion. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). However, this Court is unable to undertake a review of whether an abuse of discretion occurred if the circuit court failed to include any ruling, let alone findings, in regard to this motion.

At best, the court remarked that petitioner's successful completion of a twenty-eight-day residential substance abuse program was "a lot too late" and that she was unlikely to correct the conditions of abuse and neglect in the near future. However, these remarks, if considered sufficient findings in and of themselves, cannot form a basis for denial of an improvement period because the court appears to be invoking the statutory basis for termination of parental rights, not the standard for obtaining an improvement period. Indeed, West Virginia Code § 49-4-604(c)(6) provides that parental rights may be terminated upon, among other things, a finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. However, West Virginia Code § 49-4-610(2)(B) requires, among other things, that a parent "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period" in order to obtain a post-adjudicatory improvement period. Here, the court made no findings as to whether petitioner satisfied this burden. Accordingly, we must remand the matter so that the circuit court may enter a new dispositional order with a ruling on petitioner's motion for a post-adjudicatory improvement period, including sufficient findings of fact and conclusions of law in support of the ruling. Further, upon remand the circuit court is instructed to bolster its findings of fact and conclusions of law in regard to the termination of petitioner's parental rights, if it still believes that such disposition is appropriate.

In her second assignment of error, petitioner alleges that the circuit court erred in terminating her parental rights when less restrictive dispositional alternatives were available. Again, it is impossible for this Court to review this assignment of error, given the circuit court's conclusory "findings" set forth in its dispositional order, which consisted simply of the court checking boxes next to statutory language it believed was applicable. As we have previously held, such conclusory declarations are insufficient for termination of parental rights.

Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § [49-4-604(c)(6)] on the record or in the order, the order is inadequate.

*Edward B.*, 210 W. Va. at 624, 558 S.E.2d at 623, Syl. Pt. 4, in part.

Specifically, West Virginia Code § 49-4-604(c)(6) is explicit that, in order to terminate parental rights, a circuit court must find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the child's welfare. Here, the order simply declared that the children's best interests required termination of petitioner's parental rights. Further, the order declared that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected because petitioner had not made efforts to rectify the circumstances which led to the filing of the petition, which directly conflicted with the evidence presented. Petitioner had, in fact, successfully completed a residential substance abuse program, demonstrating that she made an effort to remedy the conditions at issue. This conflict between the court's form order and the actual evidence highlights the impropriety of utilizing such an order, as opposed to crafting a detailed order containing specific findings of fact upon which to base its conclusions of law. While it is true that the court also checked a box indicating that petitioner had not followed through with the applicable case plan, we nonetheless believe that the overall form of the order on appeal demonstrates the conclusory nature of these findings, which this Court has expressly found to be inadequate. As such, we find that it is necessary to vacate the dispositional order and remand the matter for the entry of a new order containing detailed findings of fact and conclusions of law specific to petitioner in support of the dispositional alternative the court finds appropriate.

For the foregoing reasons, we vacate the circuit court's January 27, 2022, order terminating petitioner's parental rights[5] and remand the matter with instructions for the court to enter a new dispositional order addressing petitioner's motion for a post-adjudicatory improvement period and the termination of petitioner's parental rights, if the court believes this to be the appropriate disposition, consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded, with direction.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

---

[5]The vacation of the court's January 27, 2022, order applies only to the termination of petitioner's parental rights. That order also terminated the father's parental rights. However, he has not appealed that termination. Accordingly, the portion of the order terminating the father's rights remains in full force and effect.

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn